The next matter on our calendar is Dmitry Kruglov v. Copart of Connecticut. Victor, when we finish here, I want five minutes before they come into the roving room, so we can take off our robes. Can you arrange that, that they don't come in the other door? Okay, I'll let them know. Right. Mr. Kruglov, you should know that we've read your papers and we know your argument, but you can take your five minutes and try and tell us why you're not in small claims court. My greatest difficulty, I have only five minutes and I have 13 complaints, so I have to pick the most important ones that I will address. And the second difficulty is that the lower court didn't address all my complaints, they addressed just four and the rest they dismissed without consideration, so I don't know how to rebut an argument that was never made, but I will rebut the four and I will address the other ones that, why I think they should be back on the calendar. When I looked at my complaint, I found one Supreme Court decision that I said, this is my case, I don't need to bring any other references, this opinion has everything that is in my case to the T. I'm talking about Gore versus BMW. There are many similarities. In both cases, they started with an automotive purchase at a car dealer. In both cases, plaintiffs claim some damage and they want punitive damages. And in both cases, the court has asked to weigh on reprehensibility factors whether punitive damages would be allowed as a claim or not. And in this opinion that Judge Stevens wrote, he discussed reprehensibility factors that should be considered and noted that in Gore's case, they were not present. But in his wisdom, he realized that there could be different factors and slightly different variations on those circumstances. So to clarify court's position, he stated as if addressing hypothetical opposite case to clarify court's opinion and I'll quote. He wrote, to be sure, infliction of economic injury, especially when done intentionally through affirmative acts of misconduct or when the target is financially vulnerable can warrant a substantial penalty. The court did not say that target must be general public. They affirmed those three elements saying that either of those two, either intentional affirmative misconduct or targeting financially vulnerable would warrant a penalty. And I would like to go through each one of them to show how it is relevant to this case. When we're talking about targeting, let me start with that. It doesn't mean that volume should be substantial. It means that they crafted a message to target this group. And I said that COPART advertised inviting public. I noted they, I bought a donated vehicle. And maybe you're not familiar in this concept, but in another concept you would recognize the situation. You donate to a Salvation Army. You do not shop in a Salvation Army unless you accidentally donated something that you didn't mean to donate. Can I buy it back from you? I'm sorry. But otherwise it is understood that you donate to charity and people financially vulnerable will buy your donation for a symbolic price. So COPART was selling to me a vehicle somebody else donated to charity. COPART didn't donate the vehicle to me. Somebody else donated to COPART to sell, well to charity and charity told COPART you're a dealer. We cannot sell it in Salvation Army. Sell it here. What they did after that was outrageous misconduct. Because when I asked for a refund, I felt that there is no procedure for the refund. They didn't send me papers, fill it out. They didn't say prove it. There was, we can't help you. I'm not asking for help. I'm asking you to follow on a procedure. You say there is a refund, follow the process. But there was no process. I had to plead and I was denied without justification. They didn't say, we looked at your claim. No. There was nothing. Secondly, when asked for a secondary refund, because they exceeded time. So there were two separate instances. And again, there was no procedure other than saying go away. And I thought that this is a situation where I should ask a jury to decide what punitive damages should be. But if you compare what Dr. Gore was asking, he had a mere $600 damage on his car, which was due to some minor pain damage that was repaired. He didn't even know there was damage. In my case, I had the vehicle, I had the contract for $1,500 equity that I had. Contract later, contract later, contract later. I have zero. I have not even a paper to show for it. It's like sitting at a table with card cheaters. And they are not done with you until your last penny is gone. I can address why employment claims should be considered because the acts that I described that were trickery and deceit, they were before my employment claim happened. And with respect to emotional damages, I'd just like you to appreciate the situation. An unemployed person goes to buy a donated vehicle. And the greatest loss isn't the greatest loss of $1,500, the present loss. I lost not merely this opportunity, I lost all future opportunities. I went to this AIG interview before I rented the car and said I cannot rent the car anymore. It's too expensive, I have to buy something. So when my old purchase money was gone, not merely I lost that employment opportunity, I was precluded from going on all future opportunities to go for an interview. This is not merely an emotional distress, that enough to drive a man suicidal under different circumstances. And the court said that there is no distress. The time has expired. We will hear from Copart. Have a seat right there. May it please the court, Thomas Darmody for the defendants, Copart of Connecticut, Inc. I'm a little bit handcuffed here as Mr. Krugloff discussed the case Gore v. BMW, which isn't cited in his brief at all. So I'm really not sure what that case refers to. But the dis- Why didn't Copart give him a refund if the car was a lemon? The car was sold as is. Mr. Krugloff's description of that these are donated cars is not actually accurate. They can be from many different- But it didn't work. Right, and- Why didn't you give him a refund? Because the car is bought as is. It's an online auction. The cars are described as what they are. They're not donated cars necessarily. Described as working, for God's sakes? Not always. Why would you buy a car that's not working? There are many reasons. $1,500 for a car that doesn't work. Well, I appreciate that. What kind of business do you have? I appreciate that, Your Honor, but that's really not even the question that we're here to decide. Whether we should give him a $1,500 refund would be the main reason why this case doesn't belong here. The only reason that this appeal is here is whether or not this case has subject matter jurisdiction. I understand the reason why the case is here, but I want to know why he didn't get a refund if the car didn't work. I'm not really privy to that. I'm not here to argue the merits. Is that a business model? Excuse me? To sell it online and forget it after that? There are some instances with respect to the cars that are sold by Copart. Many of the vehicles that are sold by Copart are described on their inventory as vehicles that are damaged in some way. The donated vehicle is not necessarily a large portion of the sales. Most of the sales are when cars are totaled due to an automobile accident. An insurance company will then sell the vehicle for salvage. They're required by law to do that. They sell the vehicle to Copart or to one of its members who then sells the car as is. People can buy cars online for many reasons. They could be buying a car for one specific part. It may not be the part that makes the car run. There are many different reasons. The customers who come in to buy the cars are given the opportunity to inspect the cars and to come and drive them and have somebody inspect them and appraise the vehicle. And if they choose not to do that, they're going based on it, it's being sold as is. Putting that aside though, nothing in what Mr. Krugloff has presented provides us with subject matter jurisdiction of his damages being more than $75,000. You represent Copart, right? Not the other? I only represent Copart. I do not represent the auto market, Rexel Auto Parts. The auto market is apparently an LLC, which means it actually has its citizenship of all of the members of the LLC. I mean, it's described as an Indiana corporation. And do you have any information about the members of the LLC? No information about auto market LLC. They're not my client and we're not here representing them. Thank you. General, is there any other questions? I have no further questions. Mr. Krugloff, just come to the microphone for one moment. Do you know about Small Claims Court? Where do you live? Do you live in New York or Connecticut? I live in New York and Small Claims Court cannot award punitive damages, which what I was seeking . . . Right. You're not going to get punitive damages, but you could at least get back what you paid for the car. I urge you to pursue that remedy. So I should go to state court if I were to state a claim for punitive damages? I think that that would be more productive. We haven't decided this case yet, but you know about the $75,000 limit. Mr. Gore, for a scratch on a car, got a verdict of $4 million, which the Supreme Court didn't say he is not allowed to have. They merely reduced it. I know. So given that reprehensibility factors compared to BMW are through the roof, there is affirmative misconduct. My economic damage by a mile exceeds what Mr. Gore experienced. So that given great similarity, I should be entitled to a similar relief that he was seeking. Do you understand what your adversary was saying about the terms of the sale? He was saying that the . . . He was saying, and I have no idea what the truth is because we don't have the merits of this case before it, but he was saying that the car was sold as is, which means that there's no representation whatsoever that the car works. That you might be buying the car to get its headlights or its taillights to use them on a different car. That it's simply that the terms of the contract were as is. So I don't know whether going to the state court is going to be productive for you or not. Because if it was clear that the car was sold as is, there's nothing illegal about selling a car for its junk value. I'm glad you said that because that's what I was addressing in my complaint to the other court, but not here. They say, Coppert, that you have to, as a consumer, be prudent and inspect the car before you take it. If there's an additional damage discovered, you can ask for refund. By additional damage, here's the deal. You go and you inspect the car several days before the auction, then they close access to the car. You bid on it. You come to pick it up. Something can happen in the course of those several days when you're not allowed access to the car. A tree can fall on it. Somebody can come steal a part because people roam around. They can just take something. You have to see it. I said, I have my inspection sheet. I inspected every car. I know that the car was driving before. Excuse me. I'm not saying that to offer you the opportunity to convince me. I'm just saying that before you decide whether to go to another court, you should be aware that your adversary is going to say, that Coppert is going to say, we sold the car as is without any representation that it works or that it's of any value. As long as you're aware of that, you know. Yes. And at the same time, have member protection pledge saying, we will reimburse you. That's a promise. And apart from that, they say, if we don't deliver the title to you within 45 days, we will also reimburse you. And on both those instances, they backed away from that promise. We'll have to end here. Thank you, Mr. Kurov. Very well argued. This bench is going to take a break before we hear from the ACLU. We will return and hear that part of the argument in open court. Ten minutes, Victor. Court is adjourned in recess.